YOUNG, *Appellant*, v. BOARDMAN *et al.*

1. **Will, Renunciation of by Insane Widow.** An insane widow cannot, by her own act, renounce the provisions of her husband's will, nor can she make an election to take one-half of the estate in lieu of dower.

2. **Will: REAL ESTATE.** A husband's will which provides that " the family residence * * * to be retained for her (his wife's) use," vested in the widow a life estate in the family residence, and put her to an election before she could claim dower.

3. **Dower: ELECTION BY GUARDIAN OF INSANE WIDOW.** Revised Statutes, section 2194, giving to the guardian of an insane widow the power to elect for his ward, applies to all cases, where, under the chapter of the statutes concerning dower, any widow is entitled to the benefit of election. He may, for her, elect as between the provisions of the will and dower.

4. ———— : ————: ORDER OF COURT. It is not necessary that such guardian, in exercising these powers, should procure an order of court directing him to do so.

5. ———— : ———— : ————: CONSTITUTION. Revised Statutes, section 2194, giving to the guardian of an insane widow the power to elect for his ward in all cases where, under the chapter of the statutes concerning dower, any widow is entitled to the benefit of election, is not in conflict with section 1, article 6, of the constitution, which declares that the judicial power of the state shall be vested in designated courts.

6. **Probate Clerk: REVISED STATUTES, SECTION 1179.** A probate clerk appointed by a probate judge, under Revised Statutes, section 1179, is the clerk of the probate court and not a mere private clerk of the judge.

7. ———— : ————: CONSTITUTION. Revised Statutes, section 1179, authorizing a probate judge to appoint a separate clerk, is constitutional.

8. **Will, Renunciation of: DOWER.** A widow may renounce her husband's will and then take an absolute interest in lieu of dower.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

AFFIRMED.

*L. C. Slavens* and *W. F. Spottswood* for appellant.

(1) The will in this case gave the widow at least an equitable life estate in the homestead and thus "passed" real estate to her. 1 Shars. Blackst., book 2, note 1, * 16 ; *Bass v. Scott*, 2 Leigh, 356 ; *Wusthoff v. Dracourt*, 3 Watts, 240 ; *Collins v. Carmen*, 5 Md. 503. (2) The writing of the widow herself, renouncing the will and electing to take half the estate, is a nullity. *Rannels v. Gerner*, 80 Mo. 474. (3) Revised Statutes, section 2194, does not even assume to authorize the guardian to renounce the husband's will for his ward, but at most only purports to authorize him to elect, for her, between her dower proper and the various provisions of the statute in lieu of dower. (4) Section 2194 can only be construed to authorize the guardian to elect between dower and the statutory provisions in lieu of it, under the direction and approval of the court, in accordance with the common law and the statutes of Missouri relating to the judiciary, and to the powers and duties of guardians. *Kennedy v. Johnston*, 65 Pa. St. 451. (5) The guardian's declaration in writing, relied on by appellees in this case, was not acknowledged before any officer authorized by our statutes to take acknowledgments of deeds, and is therefore a nullity. The clerk of a court of record having a seal may take such acknowledgments. The person taking the acknowledgment was not the clerk of a court of record. At most, he was the separate clerk of the judge. (6) In any event, under the Missouri statute of wills, the widow could only take a life estate in one-third of the lands devised by her husband.

*Warner & Dean* for respondents.

(1) The act of electing to take one-half of the property as a child's part is of itself a renunciation of the will. (2) The statute authorizing the guardian to elect is constitutional. (3) The execution of the guardian's election was acknowledged before an officer authorized to take it.

BLACK, J.—This is a suit in equity to remove a cloud from the title to the real estate of the late Samuel M. Bowman, who died testate. Plaintiff brings the case here by appeal from a judgment sustaining a demurrer to the petition. The petition discloses these facts :

The will, which bears date March 14, 1885, was duly probated in the probate court of Jackson county on the ninth of June, 1885. The testator devised all of his real and personal property to Mr. Young, the plaintiff, to hold in trust, with power to sell the same and distribute the proceeds among the various legatees, some eighteen or twenty in number. One of the trusts declared is : "To support, maintain and care for my wife E. Adaliza Bowman and pay her funeral expenses ;" and in another clause, the testator makes this provision : "Said trustee will be at liberty to close up the estate and make distribution according to his best judgment, or as I may direct him hereafter ; but in case my wife survives me the family residence and furniture to be retained for her use and sufficient money to pay help and all expenses during her lifetime."

Mrs. Bowman was insane at the date of the will and so continued until her death. On the fifth of August, 1885, though insane, she filed in the probate court of Jackson county a declaration, by the terms of which she renounced the provisions of her husband's will and elected to take one-half of the real and personal property,

subject to the payment of debts, under the provisions of section 2190, Revised Statutes, 1879. Subsequently, and on the twenty-first day of the same month, she was adjudged to be insane by the probate court of that county ; and thereupon the court appointed Mr. Talbott guardian of her person and estate ; and on the succeeding day, the guardian executed, acknowledged and filed in the probate court a declaration, whereby, for his ward, he renounced the provisions of the will made for her benefit, and, for her, elected to take one-half of the property subject to the payment of the debts of the estate. Mrs. Bowman died on the twenty-seventh of the same month intestate, leaving as her only heirs the defendants in this suit, who ar e either brothers or heirs of a deceased brother. The testator died without child or other descendants. The real estate is of the value of one hundred thousand dollars and for the most part unproductive. The plaintiff alleges that these two declarations, filed in the probate court, constitute a cloud upon the title vested in him as trustee, and that by reason thereof he is unable to sell the property for more than half of its value, and he prays that they be adjudged to be null and void.

1.   As Mrs. Bowman was insane, she could not, by her own act, make a valid renunciation of the provisions of her husband's will, nor could she make an election to take one-half of the estate in lieu of dower. *Rannels v. Gerner*, 80 Mo. 478 ; *Penhallow v. Kimball*, 61 N. H. 596.  Indeed, we do not understan d that the defendants place any reliance upon the declaration made by her.

The sections of the dower act by which the various questions in this case must be determined are in substance or language, as follows :

Section 2186 is declaratory of dower in its common-law signification.

Sec. 2190 :   " When the husband shall die without any child or other descendants in being, capable

of inheriting, his widow shall be entitled * * * to one-half of the real and personal estate belonging to the husband at the time of his death subject to the payment of the husband's debts."

Sec. 2192 : In all such cases " the widow shall have her election to take dower as provided in sec. 2186, discharged of debts, or the provisions of section 2190 as therein provided."

Sec. 2194 : " Such election shall be made by declaration in writing acknowledged and filed," etc., otherwise she shall take dower under section 2186 ; "and in all cases when any widow entitled to the benefit of election under this chapter shall be of unsound mind or a minor, the lawful guardian of such person may elect for his said ward in the same manner and with like effect as said ward might do were she capable in law of so electing."

Sec. 2199 : "If any testator shall, by will, pass any real estate to his wife, such devise shall be in lieu of dower out of the real estate of her husband * * * unless the testator by his will otherwise declared."

Sec. 2200 : In such case the wife shall not be endowed in any of the real estate, unless she shall in writing, etc., "not accept the provisions made for her by said will."

2. The question is made whether the will passed to the widow real estate, so as to put her to an election under sections 2199 and 2200. The term "pass" as used in this statute means and means only devise. *Gant v. Henley*, 64 Mo. 162. It is held in *Wusthoff v. Dracourt*, 3 Watts (Pa.) 240, that a clause in a will reserving two rooms in a designated house for the use of and during the life of a named person, vested in such person an estate for life, and not a mere easement for the use of such person. In *Collins v. Carman*, 5 Md. 522, the testator placed the management of his property in the hands of trustees, and directed that a designated

lot, house and furniture should be used by his wife during her life, and it was held that these provisions of the will were such a devise of real and personal property under the statute of that state as to create a necessity for a renunciation before the widow could claim dower.

We entertain no doubt but the will of Gen. Bowman in this case, gave the widow a life estate in the property known as the family residence. It is true he devised all of his property to the trustee and directs a sale thereof for the purposes of the trust; but at the same time, he says the family residence and furniture shall be retained for the use of his wife during her life. This we think vested in her a life estate, and put her to an election before she could claim dower. The defendants insist, on the authority of *Kaes v. Gross*, 92 Mo. 648, that the homestead is exempt from the operation of the will and therefore nothing was devised to or for the wife. The answer to this is, that a life estate and a homestead exemption are different things. As shown in that case, a homestead may be lost by abandonment; whilst as to this life estate, the widow would have been entitled to the income therefrom had she lived and seen fit to reside elsewhere, and we see no reason why that life estate was not at her disposal. Again, for aught that is shown, this family residence is in excess of the homestead exemption, both in quantity and value.

3. The first contention of the plaintiff is, that while these statutes give the guardian power to elect to take one-half of the property in lieu of dower, they do not give him the power to elect as between dower and the provisions of the will. The clause of section 2194 giving to the guardian the power to elect for his ward is not limited by reference to any section or particular case or cases. It applies to all cases where, under the chapter of the statutes concerning dower, any widow is entitled to the benefit of election. There are other cases besides that where the husband dies

without any child or other descendants in which she has an election. Thus she is entitled to make an election where he dies leaving such child, but not by the last marriage. So, too, the widow has the right to take a child's part in lieu of dower. The sections before set out, relating to her right to renounce the provisions of the will, are a part of the dower act. They do not, it is true, use the term elect, but say she must, by writing, "not accept the provisions made for her by said will." The filing of the declaration under those two sections is but an election not to take under the will. The provisions made for her in the will stand for dower until she declines to accept them. The act of renunciation is an election. Until the act of February 17, 1865 ( Acts of 1865, p. 24 ), the guardian of a minor or insane person had no such power of election. This power was then, for the first time, given to the guardian by way of an amendment to what is now section 2194. No reason is seen why the guardian may not make the election not to accept the provisions of the will as well as in the other cases. The evident object of the amendment was to give him this right in all cases of election provided for in the dower act, including the right and power to "not accept" the provisions of the will. We cannot see that *Bretz v. Matney*, 60 Mo. 444, has any bearing upon the present case.

4. The guardian did not, in this case, apply for or procure an order of the court directing him to make the election, and in this there is no irregularity. The power to make the election, either to not accept the provisions of the will or to take one-half of the estate subject to the payment of debts, is vested in the guardian without any such order. The statute does not contemplate that he will procure an order therefor before or after making the election. On the contrary, the power vested in him is that he may, for his ward, elect in the same manner and with like effect as she could had she been of sound mind.

5.  Nor is the statute in conflict with section 1 of article 6 of the constitution, which declares that the judicial power of the state shall be vested in designated courts.  The power of the legislature to authorize the guardian of an infant or insane person to transfer the estate of such infant or insane person has been again and again affirmed by this court.  *Thomas v. Pullis,* 56 Mo. 211 ; *Gannett v. Leonard,* 47 Mo. 205 ; *Cargile v. Fernald,* 63 Mo. 304.  Happily, such powers can no longer be conferred by special acts, as under former constitutions ; but the power of the legislature to enact general laws, authorizing the guardian of a minor or insane person to transfer the estate of the ward, remains unimpaired.  This being so, there can be no doubt but the act in question is not open to the objection made to it.  Without authority conferred by statutes upon the guardian of an insane widow, it would of course devolve upon the courts to make the election for her. *Penhallow v. Kimball, supra ; Van Steenwyck v. Washburn,* 59 Wis. 483 ; *Kennedy v. Johnston,* 65 Pa. St. 454.  These cases are cited as opposed to the conclusion before reached, namely, that the guardian of an insane widow may, for her, elect not to take under the will.  But they are based upon the fact that there was no statute in those states giving to the guardian such powers.  We do not understand these cases to hold that the legislature could not confer such powers upon the guardian.  On the contrary, it is said in the case last cited :  " It is under this act the committee derives all his powers, and unless the power to elect can be found in the law or be fairly inferred from its general terms, it does not exist ; "  thus giving recognition to the proposition that the committee might make the election if authorized by law so to do, as in the case now under consideration.

6.  Again, it is insisted that the declaration filed by the guardian was not acknowledged before an officer authorized to take the acknowledgment of deeds.  It

is certified under the hand and official seal of "James H. Smith, clk." who affixes thereto the seal of the probate court.  The charge is that he was clerk of the judge and not of the court; but it is stated that he was appointed by the judge of the court in pursuance of section 1179, Revised Statutes, 1879.  That section makes it the duty of the judge of the probate court to act *ex-ffiocio* as his own clerk, "provided that any judge of probate may, by an entry of record in said court, appoint a separate clerk, who shall be paid by said judge and shall hold his office at the pleasure of the judge."  The clerk thus appointed is required to give bond before entering upon the duties of "his office," conditioned to discharge the "duties of his office." And when so appointed and qualified, "may discharge all the duties of clerk and shall have power to do and perform all acts and duties in vacation which the judge of said court is or may be authorized to perform in vacation," etc.  Throughout the law relating to the administration of estates of deceased persons and the probate of wills, various duties are assigned to probate clerks. When the judge appoints a clerk, these duties devolve upon the clerk thus appointed.  There can be no doubt but he is the clerk of the court and an officer of the court, and not in any sense the clerk of the judge.

7.  It is also insisted that the clerk of the probate court should be elected, and that the act authorizing the judge of the probate court to appoint the clerk is unconstitutional.  The present constitution made it the duty of the general assembly to establish a probate court in every county, to be a court of record and to consist of one judge, and the jurisdiction of these courts is defined. The supreme court and the St. Louis court of appeals have power to appoint their own clerk.  "The clerk of all other courts of record shall be elective."  Const. secs. 34 and 39, art. 6.  The general assembly did establish a probate court in every county and if the constitution ended with these sections, the act in question

would be in conflict with them. But section 35 of the same article provides : " Probate courts shall be uniform in their organization, jurisdiction, duties and practice, except that a separate clerk may be provided for, or the judge may be required to act *ex-officio* as his own clerk." At the time this constitution was adopted, jurisdiction over probate matters, in many counties, still remained in the county courts, and in others it was vested in probate and other courts by special acts, with little or no regard to uniformity. Hence the declaration that these courts, required to be established, should be uniform in their jurisdiction. The convention also knew that in many counties the business did not require the services of a clerk and hence the provision that the legislature might provide for a separate clerk, or the judge might be required to act as clerk. In many counties, there is no necessity for a separate clerk ; and in others there is, by reason of the amount of work to be done. It was necessary that the court should have a separate clerk, or that the judge should act *ex-officio* as clerk, in view of the many duties assigned to the clerk in the existing statutes. Section 35 was designed to supply these wants, and it leaves the matter of appointing or electing a clerk entirely with the legislature. Had the framers of the constitution intended that probate clerks should be elected, this section would have been omitted, or different language used. With this section leaving it to the legislature to provide for clerks of probate courts, they are excepted from the operation of section 39, the same as is the clerk of this court or the clerk of the courts of appeals. The statute is, therefore, in accord with the constitution. It provides for the very necessities contemplated by the constitution. As the clerk is a clerk *de jure*, the question, ably presented on both sides, whether he can be regarded as a *de facto* officer, is out of the case.

8. By the first section of the statute concerning

wills, every male person of sound mind and twenty-one years of age may, by last will, devise all of his estate, real, personal and mixed, "saving the widow her dower." Because of this statute, it is insisted that the widow must take under the will or dower, that she can-not renounce the will and then take an absolute interest in lieu of dower. In *Griffith v. Canning*, 54 Mo. 282, the husband devised to his wife one-third of his real estate for life, and one-third of the personal property, subject to the payment of debts. She refused to take under the will and then elected to take one-half of the real and personal estate, subject to the payment of debts, under what is now section 2190. She then claimed the four hundred dollars allowed by sections of the statute now numbered 107–8–9. It was held that the effect of the election was to so change her attitude to the estate that she thereby ceased to be dowress, and became, as to the personal property, a distributee, that she could not recover the four hundred dollars as dowress, but must await the final settlement and payment of debts and take like any other distributee. The exact point made in this case was not made in that, but that case is based on the proposition that she could renounce the will and also elect to take one-half of the property subject to the payment of debts; for if she could only elect to take dower, then she should have recovered the four hundred dollars as dowress. That dower, as used in the statute concerning wills, means one-third of the real estate for life may be conceded, so far as it has any reference to real estate. But other provisions of the statute give the widow the right to take one-half of the property in lieu of dower. When the law saves to her dower, it also saves to her the right to take that which it gives in lieu thereof. The will is as much subject to one of these statutes as the other. When she renounces the will, we can see no reason why she does not stand on the ground of any other dowress, nor why she should

not be entitled to the same rights of election. It is argued by counsel for defendants that the act of electing under section 2190 is of itself an election not to take under the will, but in the view we have taken of the case, that question need not be considered.

The leaning of the courts is in favor of wills. The testator here made ample provision for his wife, and if it devolved upon the courts to exercise the power of election, they would in all probability not disturb the will. But the power to make the election is conferred upon the guardian, and his election, legally made as it is in this case, is final.

The judgment is affirmed. RAY, J., absent; the other judges concur.