THE SINGER MANUFACTURING COMPANY, Appellant, v.
L. HIBBS, Respondent.

Kansas City Court of Appeals, April 19, 1886.

1. PRINCIPAL AND SURETY—LIABILITY OF SURETY NOT TO BE EXTENDED
BEYOND TERMS.—The liability of the surety cannot be extended be-
yond the plain terms of his contract.   He is bound by the condi-
tions of his obligations, and no further.   His undertaking will
extend to whatever is comprehended within the scope and limits of
his engagement, but to nothing more.   The surety's liability cannot
be extended by implication.

2. ———— NEW CONTRACT—CASE ADJUDGED.—Where the agreement
guaranteed by the suretyship was practically, though not formally,
terminated, and an entirely new contract of employment was en-
tered into between the principal and obligee in the bond, and the
duties of the principal were changed and his locality of employment
changed by the new contract, all without the knowledge or consent
of the surety, the surety is not liable on the bond, under the new
employment.

APPEAL from Bates Circuit Court, HON. JAMES B.
GANTT, Judge.

*Affirmed.*

Statement of case by the court.

This action was brought against defendant as surety
upon a bond in the penal sum of five hundred dollars, in
which bond one George Warriner was principal.   Said
bond was dated June 27, 1879, and contained the follow-
ing condition :

"The condition of the foregoing obligation is such
that, whereas, the said The Singer Manufacturing Com-
pany has appointed the above bounden G. Warriner
agent of it, the said The Singer Manufacturing Company,
for the purpose of selling sewing machines, and for the
purpose of collecting moneys due them on notes, leases,
or other accounts ; and,

"Whereas, as such agent, the said G. Warriner has no authority to sell or dispose of any such machines, otherwise than as specially authorized and directed by the said The Singer Manufacturing Company, and at such prices and upon such terms as may be fixed by them, from time to time, nor to do any act except as specially directed by them;

"Now, if the said G. Warriner shall well and faithfully perform and discharge his duty as such agent, as shall be specified in any and all agreements which he has, or may hereafter make, with the said The Singer Manufacturing Company, and shall well and truly, from time to time, pay over and deliver to the said The Singer Manufacturing Company, all moneys, bonds, notes, leases, agreements, contracts, property and things of value whatsoever, which he, as agent of the said The Singer Manufacturing Company, may hereafter collect, or receive, or obtain; and shall, also, well and truly perform all obligations and duties, and pay to the said The Singer Manufacturing Company all just debts, claims and demands, which are now, or may hereafter, become due and owing by the said G. Warriner to said The Singer Manufacturing Company; and shall at the expiration of his (the said G. Warriner), agency of the said The Singer Manufacturing Company, render a true account of, and deliver to said The Singer Manufacturing Company all property, choses in action, debts, evidences of debt, and money, which he may have in his hands, then this obligation to be void; otherwise, to be and remain in full force and effect."

On June 27, 1879, the plaintiff and the said Geo. Warriner entered into a written contract, by which the latter was employed to sell the plaintiff's sewing machines at Mound City, Kansas, and vicinity. The duties of the said Warriner were at considerable length set out in the contract. Among other provisions in said contract was the following:

"It is further agreed between the parties aforesaid

that this agreement may be altered, amended, or changed, in writing, but not otherwise, with the consent of both parties, and may be terminated at the pleasure of either party."

On July 1, 1882, the plaintiff and the said George Warriner entered into another agreement in writing. By the latter agreement said Warriner became the plaintiff's "agent at its branch office at Fort Scott, Kansas, for the sale of its sewing machines, and for such other business as it may authorize him to transact."

By the latter agreement, said Warriner's duties, as well as compensation, were in many, if not in most respects, different.

The breaches of the bond complained of occurred after the execution of the latter agreement. Said latter agreement was made without the knowledge or consent of the defendant.

"Mound City is the county seat of Linn county, Kansas, and Fort Scott the county seat of Bourbon county, Kansas, and the two towns are from twenty-five to thirty miles apart, and the counties are adjoining to each other, Bourbon lying to the south of Linn."

These facts are learned from the agreed statement of facts, upon which the case was submitted to the court, sitting as a jury.

The court found for the defendant, and the plaintiff has appealed.

J. D. PARKINSON, for the appellant.

I. The declaration of law asked for by plaintiff and *refused*, should have been given as the law applicable to the contract created by the bond sued on. *Singer Manufacturing Co. v. Hester*, 6 Fed. Rep. 806; *Domestic Sewing Machine Co. v. Webster*, 47 Iowa 354.

II. The declarations of law asked for by defendant, and *given*, should have been refused. They are based upon the general doctrine of suretyship, and ignored the clauses of the bond which except it from the general doc-

trine and make it a continuing indemnity. *Ins. Co. v. Sedgwick*, 110 Mass. 163 ; *Singer Manufacturing Co. v. Allen*, 122 Mass. 469.

III.   The bond contains the following clause :   " It is further agreed between the parties aforesaid that this agreement may be altered, amended, or changed, in writing, but not otherwise, with the consent of both parties."   And this clause, with the words in the bond: "As shall be specified in any and all agreements which he has or may hereafter make," makes the agreement (new contract) a contemporaneous writing.   The clauses together constitute an agency in Warriner by Hibbs to make the second agreement, and bind him by it, if made in writing, as stipulated.   Broom's Legal Max. 598; *Sewing Machine Co. v. Webster*, 47 Iowa 357.

WILLIAM PAGE, for the respondent.
I.   It is universally held that the undertaking of a surety is to receive a strict interpretation, and is not to be extended beyond the fair scope of its terms, and any material change in the terms of the contract with the principal will discharge the surety. *Blair v. Ins. Co.*, 10 Mo. 560; *Nolley v. Callaway County Court*, 11 Mo. 447; *State to use, etc., v. Boon*, 44 Mo. 254 ; *Orrick v. Vahey*, 49 Mo. 428 ; *St. Louis v. Sickles*, 52 Mo. 122 ; *State ex rel., etc., v. Roberts*, 68 Mo. 234; *Miller v. Stuart*, 9 Wheaton (U. S.) 680 ; *Bank v. Chickering*, 3 Pick. (Mass.) 335 ; Brandt on Suretyship and Guaranty, sects. 342–347.

II.   The declarations of law made for defendant were properly made, and those refused for plaintiff were properly refused.

III.   The condition of the bond did not warrant the said company to make a contract with the principal about *entirely different matters*, but only to change the contract *within the scope of the original agreement*. *White Sewing Machine Co. v. Miller*, 2 N. W. Rep. 196; *Insurance Co. v. Coats*, 6 N. W. Rep. 684.

HALL, J.—The plaintiff asked the court to give certain declarations of law, which the court refused to give; and, against the plaintiff's objections, the court gave for the defendant certain declarations of law. All those declarations of law, both given and refused, have been omitted from the foregoing statement of the case, for the reason that, if upon the facts contained in said statement the judgment of the court was correct, then its action in giving and refusing said declarations of law was, also, correct, and if said judgment was erroneous, then said action as to the declarations of law was, also, erroneous.

The question, then, is, upon the facts stated, should the court have found for the defendant?

It is very clear that the bond executed by the defendant as surety of Warriner is to be construed in connection with the first contract entered into by Warriner with the plaintiff. The bond and said contract were not only executed on the same day, but in the bond the fact of such contract having been made was recited as a part of the condition upon which the obligation of the bond depended.

It is a principle of law, too well settled to require citation of authorities in its support, that "the liability of the surety cannot be extended beyond the plain terms of his contract. He is bound by the conditions of his obligation, and no further. His undertaking will extend to whatever is comprehended within the scope and limits of his engagement, but to nothing more." *State to use, etc., v. Boone et al.*, 44 Mo. 262.

The surety's liability cannot be extended by implication.

By the first agreement it was agreed between the plaintiff and Warriner that said agreement might be altered, amended, or changed, in writing, with the consent of both parties, and that it might be terminated at the pleasure of either party. By the bond the liability

of the defendant, as Warriner's surety, was made to extend to any failure on the part of Warriner to discharge "his duty as such agent, as shall be specified in any and all agreements, which he has or may hereafter make" with the plaintiff.

This language of the bond is extremely general. But the words "such agent," clearly refer to the agency created by the first agreement. And had that agreement been terminated in a formal manner, and had the plaintiff then, without the knowledge and consent of the defendant, again employed Warriner in any capacity, at any place, it is clear to us that the defendant would not have been liable on the bond under the new employment. *Amicable Mutual Life Insurance Company v. Sedgwick,* 110 Mass. 166.

We are unable to perceive any real difference between the supposed case and the case at bar. The relation between the plaintiff and Warriner was not formally terminated, but an entirely new contract of employment was entered into between them. The old contract was, in fact, ended. Not only were the duties of Warriner changed by the new contract, but the locality of his employment was changed. The defendant might have been willing to guarantee the discharge by Warriner of his duties as plaintiff's agent at Mound City, and yet not have been willing to have guaranteed the discharge by him of said duties at Fort Scott. The language of the bond touching future agreements, we think, referred to the alterations, amendments and changes in the first agreement authorized thereby, and not to new and distinct agreements. Three years had elapsed after the execution of the first agreement, before the last agreement was executed. To hold that, by the terms of the bond, the defendant is liable in this case, would be to hold that he would have been so liable had the plaintiff, at any time, entered into another agreement employing Warriner in any capacity, at any place however remote from Mound City. The distance of Fort Scott from Mound

City is immaterial. This we cannot hold. By the terms of the bond no such liability is expressly imposed. By implication, the defendant's liability cannot be extended.

In our opinion, the trial court, upon the facts, properly found in favor of the defendant. Judgment affirmed. All concur.